Burks, J.
The main question for adjudication in this case is, whether the sureties of a public officer, who has made default in accounting for taxes of the state placed in his hands for collection, and against whom and the sureties on his official bond a judgment has been recovered by the Commonwealth for such default, are entitled as against said judgment to claim the exemption allowed by article XI of the constitution and the act of the general assembly giving effect thereto. The act adopts the language of the constitution, and need not be further noticed. It may be found in chapter 183 of the Code of 1873.
The first section of the article is in these words:
*574 “§ 1. Every householder or head of- a family shall be entitled, in addition to the articles now exempt from levy or distress from rent, to hold exempt from levy, seizure, garnisheeing, or sale under any execution, order or other process, issued on any demand for any debt heretofore or hereafter contracted, his real and personal estate, or either, including money and debts due him, whether heretofore or hereafter acquired or contracted, to the value not exceeding two thousand dollars, to be selected by him; provided that such exemption shall not extend to any execution, order, or other process issued on any demand in the following cases:
“1st. For the purchase price of said property, or any part thereof.
*“2d. For services rendered by a laboring person or a mechanic.
“3d. For liabilities incurred by any public officer, or officer of a court, or any fiduciary, or any attorney at law, for money collected.
“4th. For a lawful claim for any taxes, levies, or assessments accruing after the first day of June, eighteen hundred and sixty-six.
“5th. For rent hereafter accruing.
“6th. For the legal or taxable'fees of any public officer, or officers of a court, hereafter' accruing.”
The language of this section is certainly very broad and comprehensive, and the constitution, in express terms, requires that all the provisions of the article shall be construed liberally, to the end that all the intents thereof may be fully and perfectly carried out. (§ 7.)
One of the intents, manifested in the plainest terms, was to apply the exemption right to debts contracted before the adoption of the constitution. This particular intent was defeated because the clause designed to give it effect, was to that extent in violation of the constitution of the United States. It was so held by this court in the “Homestead Cases,” 22 Gratt. 266.
' Was it intended to embrace the state within these sweeping provisions? It is a 'general rule of 'great antiquity, founded in the highest public policy, that general statutes do not bind the sovereign unless the 'intent be manifested by express words or by necessary implication; and while it is said that the sovereign is impliedly bound by statutes passed for the public good, the 'preservation of public rights and the suppression of ' public wrongs, the relief and maintenance of the poor, the general advancement of learning, religion and justice, or for the prevention of fraud, yet I apprehend that where such statutes are general, the implication, ^unless irresistable, does not extend to divest the sovereign of any right, privilege, title or interest. Brown’s Legal Maxims, 76, 77; United States v. Herron, 20 Wall. U. S. R. 251, 263; Saunders v. Commonwealth, 10 Gratt. 494, 496; Levasser v. Washburn, 11 Gratt. 572, 577; Commonwealth v.. Cook, 8 Bush. Ky. 220.
This rule of construction applies as well to a written constitution, framed by delegates of the people in convention, as to an act passed by an ordinary legislature; and if there were no exceptions engrafted upon the section under consideration, standing alone, under the rule, notwithstanding the broad language employed, and the general intent manifested to secure a benefit to the more needy portion of the community, the state would not be construed to be within its operation; for such a construction would divest important public rights and interests, and the state is not embraced either by express words or by necessary implication.
But we are not at liberty to apply the rule to the purview or body of the section without regard to the proviso attached to it. The whole section must be construed together, so as to give full effect, if possible, to every part of it.
“The proviso,” says Chief Justice Marshall, “is generally intended to restrain the enacting clause, and to except something which would otherwise have been within it, or in some measure to modify the enacting clause.” Wayman v. Southard, 10 Wheat. R. 1, 30.
Substantially the same definition is given by Mr. Justice Baldwin in 15 Peters R. 423. “The office of the proviso,” says he, “generally is either to except something from the enacting clause, to restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended to be brought within its purview.”
*The proviso to section 1, article XI, contains six distinct clauses, each of which is plainly an exception to or limitation or qualification of something contained in the body of the section. The purview or enacting part confers the power or grants the right to claim exemption from levy, &c., on any execution, order, or other process, issued on any demand for any debt (heretofore or) hereafter contracted. The proviso declares that such exemption shall not extend to any demand in the five cases enumerated, the fourth of which is “for a lawful claim for ány taxes, levies, or assessments accruing after the first day of June, eighteen hundred and sixty-six.” This clause (the fourth) excepts from the operation of the general-grant a lawful claim for any taxes. This exception by its 'very terms necessarily includes the Commonwealth, and therefore necessarily implies that under the words “any demand for any debt” in the enacting part of the section, it was intended to embrace the Commonwealth as well as her citizens; otherwise there would have been no necessity for the exception so far as the Commonwealth is concerned.
It was argued with much force by the attorney-general that taxes assessed by 'the commonwealth for the support of government and for the public needs, retained the character of taxes from the time of assessment until paid into the public treasury; that they were no less taxes in the hands of the tax-collector than they were in the hands of the tax-payer, and that the judgment in *575 this case against the collector and his sureties was a claim for taxes within the meaning of the 4th section. T am not prepared to say that this is not a sound argument. The demand of the state was for the amount due for taxes placed in the officer’s hands for collection. Such was the tenor of the notice on which the motion was made, and *such the character of the judgment rendered. Why, then, is not the judgment “a lawful claim for taxes?”
If, however, this demand of the state is not within the operation of the 4th exception (and I incline to think it is), I am still of opinion that it is within the third exception, which excludes the right to claim the exemption as against any demand for liabilities incurred by any public officer. The phrase “liabilities incurred by any public officer,” refers to the demand to which the exception applies rather than to the delinquent. The demand is not described as a demand against the officer, but it is “any demand” for the liabilities incurred, and therefore embraces a demand against any and all persons who share the liabilities. As soon as there is a breach of the condition of the officer’s bond, he and ,his sureties, by one and the same act, j become liable to the party injured. The J liability incurred by the officer is at the ' same time incurred by the surety. The : same principle applies to the other classes mentioned in the exception.
The exclusion established by this clause and all the other clauses of the proviso, is not intended to punish the parties excluded, but manifestly to secure a benefit to others. The first clause is intended to protect the vendor of property by not allowing the withdrawal of such property from liability for “the purchase price;” the second, to favor the laboring person or mechanic; the third, to preserve the rights of creditors and claimants against officers and others named; the fourth, to ensure to the state, counties and principalities accountably for taxes, liens and assessments; the fifth, to protect landlords; and the sixth, to secure to officers their fees; and it is to be kept in mind that to these clauses we are required by the seventh section of the article to give the same liberal construction that we give to other parts of the article.
*It was held by this court in Saunders v. Commonwealth, supra, that the surety of a public officer was not barred of his right to a discharge in bankruptcy, under the bankrupt act of 1841, by reason of the defalcation of his principal; that the exception under said act against a defaulting officer was personal, and was intended to withhold from him a benefit given to others, because he was a defaulter, and .that the policy of the exception did not extend to the innocent surety. It is contended by the learned counsel of the appellees that the like construction should be given to the third clause of the proviso under consideration. We find no fault with that ' decision, but we think it does not apply to this case.
The clause referred to (the third), as before stated, was not, in our judgment, intended to punish the defaulting officer or fiduciary, as in the case of the bankrupt, but rather to preserve the security of his creditors, and require a fulfilment of his obligations to them, and in that view and to that end should receive a liberal construction. Moreover, a very slight examination of that portion of the bankrupt act, to which the decision refers, will show that the exception as to the defaulting officer was manifestly intended to be personal as to him.
The language of the act, describing persons who might become voluntary bankrupts, is “all persons whatsoever residing in any state, district, or territory of the United States, owing debts which shall not have been created in consequence of a defalcation as a public officer,” &c. Owen on Bankruptcy, Appendix, p. 49.
This exception could not be extended to the surety without doing violence to the language employed. The person excepted is the public officer owing debts created by his defalcation as such officer.
It was further argued by the learned counsel for the appellees that the construction contended for by him has ^received legislative sanction in the act approved February 2d, 1875, (Acts of 1874-75, p. 53), requiring a waiver of the benefit of homestead exemption in the bonds of officers and fiduciaries. It is a sufficient answer to say that there has been conflict of opinion as to the proper construction to be given to the clause of the constitution under consideration, and it was therefore doubtless deemed wise and prudent by the general assembly, out of abundant caution, if for no other reason, that the waiver should be provided for. It could do no harm at least, and, in certain contingencies, might prevent much mischief.
Our reasoning has led us to the conclusion that the sureties in this case are not entitled to their homestead exemption against the appellant’s judgment, that the circuit court of Charlotte county erred in its decree, holding that they were so entitled, and that said decree should therefore be reversed and annulled.
Reaching this conclusion, the cause might be remanded without saying more, but for certain objections urged by the counsel for the appellees to the jurisdiction of the court to proceed with the cause.
The bill in this case was filed in the name of the Commonwealth, at the relation of Williarri F. Taylor, auditor of public accounts. The appellees demurred to the bill, and also excepted in their answer to the prosecution of the suit by the auditor as without authority. I-f the judgment sought to be enforced by the bill is a judgment on behalf of the Commonwealth, there can be no doubt the auditor had the right to file such a bill as was filed to enforce payment thereof to the Commonwealth. Code of 1873, ch. 40.
If I did not misapprehend the argument *576 of the counsel for the appellees, they claim that the judgment was not a judgment on behalf of the Commonwealth, but in fact a ^judgment on behalf of William Cardwell, late treasurer of Charlotte county, and therefore it could not be enforced by the auditor as a judgment of the Commonwealth.
The judgment was recovered on motion in the circuit court of Charlotte. The record shows that the notice of the motion was given in the name of the “Commonwealth of Virginia, proceeding by William Card-well, late treasurer of Charlotte.” This notice and motion were in strict conformity to section 23, chapter 46, Code of 1873, which, as far as necessary to be quoted, is in these words: “If said taxes and levies are not paid and the insolvent lists returned, certified by the judge -of the county, to the treasurer, by the first day of March, it shall be the duty of the treasurer to proceed against the collector and his sureties upon his bond, by motion, if it be for taxes, in the name of the Commonwealth of Virginia,” &c. The section further provides that the motion shall be heard by the county or circuit court of the county upon ten days’ notice in writing, &c.
The first entry of the motion on the records of the circuit court gives the style of the case thus: “Commonwealth for William Cardwell, treasurer of Charlotte county, against P. R. Ford, collector,” &c., (naming the other defendants). The style of the case in the judgment entered is, “Commonwealth of Virginia for, &c., against P. R. Ford, collector,” &c., (naming the defendants as before). Then follows the judgment in these words: “This day came again the parties by their attorneys, and the defendants say they will not further defend this motion; therefore it is considered by the court that the plaintiff recover against the said defendants the sum of $1,354.29, without damages, with interest from 2d day of June, 1874, till paid, and the costs.”
*This is a judgment on behalf of the plaintiff; the Commonwealth is the-'plaintiff, and the judgment was rendered by a court having jurisdiction.
It is further objected that if the judgment is a judgment on behalf of the Commonwealth, the circuit court of Charlotte had no jurisdiction of the bill to enforce it. This position is not tenable. Except in cases where it is otherwise specially provided, the Commonwealth may prosecute her suits in any of the courts in which other parties may prosecute suits of like character. If the judgment in this case were a judgment on behalf of William Cardwell, as contended, his personal representative could have filed a bill to enforce it in the circuit court of Charlotte. The judgment being on behalf of the Commonwealth, the suit to enforce it was properly brought in the same court. Code of 3873, ch. 166. The restriction imposed by the fourth clause of the 1st section of this chapter applies only to actions at law or suits in equity instituted on behalf of the Commonwealth in the name of the attorney-general, or when it may be necessary or proper to make certain public officers or public corporations defendants. This will be rendered apparent by reference to the act approved March 22, 1873, (Acts of 1872-73, ch. 215, p. 195, Code of 1873, ch. 166,) and comparing the 4th clause of section 1, as therein contained, with the corresponding clause and section of the Code of 1860. It will be seen that the words “or otherwise” are omitted in the said act of March 22, 1873. The restriction in the 14th clause, section 1, chapter 166, Code of 1873, does not apply to a suit in equity, such as this is, in the name of the Commonwealth, at the relation of the auditor of public accounts.
It is further and finally objected, that the demurrer to the bill should have been sustained and the bill dismissed, *on the ground that the appellant’s remedy was at law and not in equity. Under chapter 40, Code of 1873, the Commonwealth could doubtless have proceeded, as. therein prescribed, by execution to seize and sell the property, real and personal, of the defendants in the judgment; but, under the circumstances of this case, we do not regard this a plain, complete and adequate remedy. 2 Rob. Prac. (old ed.) 1; 1 Story’s Eq. Juris. § 33. All of the property was encumbered with homestead deeds, the claims under which involved questions of law which were new, and about which there was conflict of opinion in the circuit courts. To sell the property without first settling these questions and removing the obstructions to a fair sale, would have been prejudicial to the Commonwealth. It is very probable, indeed, that the property would have been sacrificed, and thus the debt of the Commonwealth might not have been paid.
The failure of the officer to comply with the 22d section of chapter 40, Code of 1873, did not affect the right of the Commonwealth to pursue her remedy in a court of equity. Moreover, the right to sell the real estate of the defendants under execution did not deprive her of the right, if she elected to exercise it, to resort to a court of equity to subject such real estate to the lien of her judgment. Code of 1873, ch. 182, § 9.
It would be premature for this court, at this stage of the case, to pass upon the claim of the appellees to credit on the judgment for payments alleged to have been made.
The decree of the circuit court must be reversed, and the cause remanded with instructions to order proper inquiries and accounts, and for further proceedings, in order to final decree.
The other judges concurred in the opinion of Burks, J.
*The decree was as follows:
This day came again the parties by their- counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of coun *577 sel, is of opinion, for reasons stated in writing and filed with the record, that the appellees, respectively, are not entitled under the constitution and laws of this state to hold any of their property or estate, real or personal, exempt from liability for the payment of the judgment on behalf of the Commonwealth in the bill in this cause mentioned, and that the several homestead deeds of the appellees, respectively, set out in the record of this cause, are void as to said judgment, and that the said decree is wholly erroneous. It is therefore decreed and ordered, that the said decree be reversed and annulled, and that the appellees pay to the appellant the costs of the appellant expended in the prosecution of the appeal aforesaid here; and this court, in the present condition of the proofs in the cause, not undertaking to decide and not deciding what credits, if any, the appellees are entitled to for payments alleged to have been made on said judgment, this cause is remanded to the said circuit court of Charlotte county, with instructions to order proper inquiries to be made and accounts to lie taken touching said alleged payments, and for further proceedings to be had, in order to final decree in conformity with the opinion and principles herein expressed and declared; which is ordered to be certified to the said circuit court of Charlotte county.
Decree reversed.